**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

CALIXTO CRISOSTOMO RAMIREZ,      )
                                 )
        Petitioner,              )
                                 )      No. 2:26-cv-02141-TLP-cgc
v.                               )
                                 )
SCOTT LADWIG,                    )
                                 )
        Respondent.              )

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Calixto Crisostomo Ramirez, an alien detained in the West Tennessee Detention Facility in Mason, Tennessee, petitions for a Writ of Habeas Corpus under 28 U.S.C. § 2241.  (ECF No. 1.)  On February 13, 2026, the Court ordered Respondent to show cause why the Writ should not be granted.  (ECF No. 6.)  He responded.[1]  (ECF No. 10.)  Petitioner replied. (ECF No. 11.)  And for the reasons below, the Court **GRANTS** the Petition.

**BACKGROUND**

Petitioner, a Guatemalan citizen, entered the United States in June 2011.  (ECF No. 10 at PageID 30.)   He is thirty-seven, has no criminal history, and he and his wife are raising a young child who is a United States citizen.  (ECF No. 1 at PageID 3; ECF No. 10-1 at PageID 40.)  The Government detained him on October 25, 2025.  (ECF No. 1 at PageID 3.)  It alleges that Petitioner's presence in this country violates sections 212(a)(6)(A)(i) and 212 (a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA") because he is an alien present in the United States

---

[1] In his response, Respondent stated "that the Court can decide this matter without further briefing and without oral argument."  (ECF No. 10 at PageID 28.)  The Court agrees.

without admission or parole.  (ECF No. 10-1 at PageID 43.)  On that basis, the United States

Immigration and Customs Enforcement ("ICE") have held Petitioner at the West Tennessee

Detention Facility in Mason, Tennessee.  (ECF No. 10 at PageID 30.)

Yet the DHS and the Executive Office of Immigration Review ("EOIR") have not held a

bond hearing for Petitioner.  (ECF No. 1 at PageID 3.)  In fact, an immigration court denied

Petitioner's request for a bond hearing.  (*Id.*)  DHS and EOIR determined that he is subject to

mandatory detention, a change from the decades-long practice of affording noncitizens in

Petitioner's position with bond hearings before their removal proceedings.  (*See* ECF No. 11 at

PageID 49–50.)  The government changed its practice in July 2025, when DHS, the Department

of Justice ("DOJ"), and ICE issued a new policy.[2]  *See, e.g.*, *Monge-Nunez v. Ladwig*, No. 25-

3043, 2025 WL 3565348, at *1 (W.D. Tenn. Dec. 12, 2025).  According to the new policy,

noncitizens who have resided in the United States for over two years and who are apprehended in

the interior of the country are subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A).

*Id.*  But before July 2025, DHS afforded those same persons bond hearings under 8 U.S.C.

§ 1226(a).  *Id.*; *Godinez-Lopez v. Ladwig*, No. 25-2962, 2025 WL 3047889, at *1 (W.D. Tenn.

Oct. 31, 2025).  The Board of Immigration Appeals ("BIA") upheld this new policy in the case

of *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025).

And for Petitioner, this means that he now faces continued detention without the

possibility of bond.  (*See* ECF No. 1.)  Petitioner alleges that his continued detention under

§ 1225(b) violates the INA and his Fifth Amendment right to procedural due process.  (*Id*. at

---

[2] American Immigration Lawyers Association, *ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission*, AILA (July 8, 2025), https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission ("For custody purposes, these aliens are now treated in the same manner that 'arriving aliens' have historically been treated.") (last visited Feb. 26, 2026).

PageID 8–9.)  He asks the Court to grant his Petition, order his release, and enjoin his detention under 8 U.S.C. § 1225(b)(2)(A).  (ECF No. 11 at PageID 54.)

This is not an issue of first impression before the Court.  And Respondent detaining Petitioner under § 1225(b) instead of § 1226(a) is not an isolated event.  Indeed, the Court has recently considered this same legal question many times and consistently held that "§ 1226 governs the arrest and detention of a noncitizen without an apparent criminal history who has been residing in the United States for over a year."  *Padilla-Ugsha v. Ladwig*, No. 25-3045, 2025 WL 3638007, at *7 (W.D. Tenn. Dec. 15, 2025); *see Monge-Nunez*, 2025 WL 3565348, at *6; *Cordova v. Ladwig*, No. 25-3037, 2025 WL 3679764, at *7 (W.D. Tenn. Dec. 18, 2025); *Rios Pena v. Ladwig*, No. 25-3082, 2025 WL 3679766, at *7 (W.D. Tenn. Dec. 18, 2025); *Moreno-Espinoza v. Ladwig*, No. 25-3093, 2025 WL 3691452, at *9 (W.D. Tenn. Dec. 19, 2025); *Urrutia-Diaz v. Ladwig*, No. 25-3098, 2025 WL 3689158, at *7 (W.D. Tenn. Dec. 19, 2025) ("So even though Petitioner here has resided in the United States for less than a year, § 1226 governs because he is not *seeking admission* but is *already in this country*.").

Because of the increasing frequency of these habeas petitions, other district courts in this circuit have also been asked to consider which statutory provision governs.  They too have determined that § 1226(a) fits in this scenario.  *See, e.g.*, *Godinez-Lopez*, 2025 WL 3047889; *Lopez-Campos*, 797 F. Supp. 3d at 784.  Other district courts across the country have concluded the same.  As one court observed:

> By a recent count, the central issue in this case – the administration's new position that *all* noncitizens who came into the United States illegally, but since have been living in the United States, *must be detained* until their removal proceedings are completed – has been challenged in at least 362 cases in federal district courts.  The challengers have prevailed, either on a preliminary or final basis, in 350 of those cases decided by over 160 different judges sitting in about fifty different courts spread across the United States.  Thus, the overwhelming, lopsided majority have held that the law still means what it always has meant.

3

*Barco Mercado v. Francis*, -- F. Supp. 3d --, 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025)

(footnotes omitted) (collecting cases).

## **LEGAL STANDARD**

A petition for habeas corpus enables a person to challenge the legality of their custody.

*See Boumediene v. Bush*, 553 U.S. 723, 745 (2008) (quoting *Preiser v. Rodriguez*, 411 U.S. 475,

484 (1973)).  And its traditional function "is to secure release from illegal custody."  *Preiser*,

411 U.S. at 484; *see* 28 U.S.C. 2241(c)(3) ("The writ of habeas corpus shall not extend to a

prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the

United States[.]").  Petitioner here asserts that his custody under 8 U.S.C. § 1225(b)(2)(A) is

unlawful.

Sections 1225 and 1226 of the INA typically govern the detention of noncitizens during

removal proceedings.  *See* 8 U.S.C. §§ 1225, 1226.  Section 1225(b)(2)(A) governs the

mandatory detention of an "applicant for admission" after an immigration officer has determined

that the applicant is not entitled to admission in the United States.

> (b)    Inspection of applicants for admission
>        . . .
>    (2)    Inspection of other aliens
>       (A)    In general
>              Subject to subparagraphs (B) and (C), in the case of an
>              alien who is an applicant for admission, if the examining
>              immigration officer determines that an alien seeking
>              admission is not clearly and beyond a doubt entitled to be
>              admitted, the alien shall be detained for a proceeding under
>              section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A).  The INA defines an "applicant for admission" as an alien "present in

the United States who has not been admitted or who arrives in the United States."  8 U.S.C. §

1225(a)(1).  And "admission" and "admitted" are defined as "the lawful entry of the alien into

the United States after inspection and authorization by an immigration officer."  8 U.S.C.

4

§ 1101(a)(13)(A).  Again, detention is mandatory under this section.  *See* 8 U.S.C. § 1225(b)(2)(A).

Section 1226(a) provides for discretionary detention:

> (a)  Arrest, detention, and release
> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
> (1)  may continue to detain the arrested alien; and
> (2)  may release the alien on—
> (A)  bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General . . . .

8 U.S.C. § 1226(a).  But § 1226(c), known as the Laken Riley Act, provides for the mandatory detention of aliens found inadmissible or deportable under specific provisions and who have been "charged with," "arrested for," "convicted of," or admit to "having committed" certain listed crimes.  8 U.S.C. § 1226(c).  Aliens arrested and detained under this section "have a right to request a custody redetermination (i.e., bond hearing) before an Immigration Judge."  *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 777 (E.D. Mich. 2025) (citing 8 C.F.R. § 1236.1(c)(8), (d)(1)).  That immigration judge "evaluates whether there is a risk of nonappearance or danger to the community."  *Id.* (citing *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)).  With those provisions in mind, the Court now turns to the Petition.

## <u>ANALYSIS</u>

The issue here is whether § 1225(b)(2)(A) or § 1226(a) applies to Petitioner's detention. These facts are not distinguishable from those in *Monge-Nunez, Padilla-Ugsha*, *Cordova*, *Rios Pena*, *Morena-Espinoza*, or *Urrutia-Diaz*.  And as Respondent correctly notes, "the questions of law in this case, and the challenges to the government's policy and practice, substantially overlap with those at issue" in previous cases.  (ECF No. 10 at PageID 33.)  So in the interest of judicial

economy, the Court addresses the main arguments at issue here—administrative exhaustion, statutory interpretation, and procedural due process—in a more succinct manner than before.

## I.       Administrative Exhaustion

To be sure, Petitioner has not exhausted his administrative remedies.  (*See* ECF No. 1.) To do so, he would need to appeal his denial of a bond hearing to the Board of Immigration Appeals ("BIA").  Respondent argues that the Court should require Petitioner to go through that process before considering his Petition.  (ECF No. 10 at PageID 31–32.)

When Congress mandates it, courts require petitioners to exhaust their administrative remedies.  *See McCarthy v. Madigan*, 503 U.S. 140, 144 (1992).  But when, as here, Congress has not imposed a statutory exhaustion requirement, the decision whether to require a petitioner to exhaust lies within "sound judicial discretion."  *Id.*  In exercising that discretion, the Supreme Court has explained that "federal courts must balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion."  *Id.* at 146.  Those institutional interests are "protecting administrative agency authority and promoting judicial efficiency."  *Id.* at 145.

The Supreme Court also identified situations in which the interest of the individual weighs heavily against the institutional interests.  *See id.* at 146–49.  Relevant here, "an administrative remedy may be inadequate where the administrative body . . . has otherwise predetermined the issue before it."  *Id.* at 148 (citing *Gibson v. Berryhill*, 411 U.S. 564, 575, n. 14 (1973); *Houghton v. Shafer*, 392 U.S. 639, 640 (1968) (in view of Attorney General's submission that the challenged rules of the prison were "validly and correctly applied to petitioner," requiring administrative review through a process culminating with the Attorney General "would be to demand a futile act"); *see also Herr v. U.S. Forest Serv.*, 803 F.3d 822–23

6

(6th Cir. 2015) ("If administrative review would come to naught, if any efforts before the agency would be pointless, the courts do not insist that litigants go through the motions of exhausting the claim anyway.") (internal quotations omitted).

The BIA's decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (2025) makes requesting a bond hearing from an immigration court futile. That is because the BIA's decision—which is binding on immigration judges—upholds the very policy Petitioner is challenging here. *See Matter of Yajure Hurtado*, 29 I. & N. Dec. at 228 (holding that aliens "who surreptitiously cross into the United States remain applicants for admission until and unless they are lawfully inspected and admitted by an immigration officer" because "[r]emaining in the United States for a lengthy period of time following entry without inspection, by itself, does not constitute an 'admission'"); *see also Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 778 (E.D. Mich. 2025) (reasoning that "administrative review is not likely to change Respondent's position that § 1225(b)(2)(A) applies in this context"). What is more, the BIA lacks authority to review constitutional challenges. *See Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006). This means that Petitioner can only bring his constitutional claim in federal court.

It follows that requiring exhaustion in this case would not further the ends of judicial efficiency and protecting administrative authority because it would only delay the resolution of Petitioner's legal questions. His individual interest in having prompt access to this forum outweighs any institutional interests at stake. Requiring Petitioner to wait for the BIA to address an issue it has already decided creates hardship for hardship's sake. The Court declines to impose such a result here.[3]

---

[3] Respondent points to a line of district court cases from Ohio requiring immigration habeas petitioners to exhaust their bond-related administrative remedies before considering their habeas claims. (ECF No. 10 at PageID 31–32 (citing *Cortez v. Lynch*, No. 25-822, 2026 WL 82039, at

## II.      Statutory Interpretation

The Parties disagree about whether § 1225(b)(2)(A) or § 1226(a) controls Petitioner's detention here.  In short, Petitioner argues that § 1225 governs the detention of recent noncitizens at or near the border and that § 1226 governs the pre-removal detention of noncitizens already present in the United States.  (ECF No. 1 at PageID 5–6.)  Respondent counters that § 1225 applies to Petitioner because "he is an alien who entered the United States without inspection or parole and thus was and remains an 'applicant for admission' who is treated, for constitutional purposes, as if stopped at the border."  (ECF No. 10 at PageID 32.)

Familiar principles of statutory interpretation control the analysis.  Courts construe statutory text "so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant."  *Corley v. United States*, 556 U.S. 303, 314 (2009) (quoting *Hibbs v. Winn*, 542 U.S. 88, 101 (2004)); *see* Antonin Scalia and Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 174 (2012) ("If possible, every word and every provision is to be given effect.").  To apply this approach, courts give each word within the statute "'its ordinary, contemporary, common meaning,' while keeping in mind that 'statutory language has meaning only in context.'"  *Kentucky v. Biden*, 23 F.4th 585, 603 (6th Cir. 2022) (citation modified) (citing *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 137 S. Ct. 1002, 1010, (2017)).  This includes the presumption "that [the] legislature says in a statute what it means and means in

---

*4–7 (S.D. Ohio Jan. 12, 2026; *Monroy Vaillalta v. Greene*, --- F. Supp. 3d ---, No. 25-1594, 2025 WL 2472886, at *2– 3 (N.D. Ohio Aug. 5, 2025); *Hernandez Torrealba v. U.S. Dep't of Homeland Sec.*, No. 25-1621, 2025 WL 2444114, at *8–12 (N.D. Ohio Aug. 25, 2025); *see also Laguna Espinoza v. Dir. of Detroit Field Off., U.S. Immigration & Customs Enforcement*, No. 25-2107, 2025 WL 2878173, at *2–3 (N.D. Ohio Oct. 9, 2025)).  The Court has reviewed those cases and respectfully disagrees with the reasoning in them for the reasons discussed above.

a statute what it says." *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253–54 (1992). For the reasons below, these principles resolve the dispute in Petitioner's favor.

Detention under § 1225(b)(2)(A) applies "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted[.]" 8 U.S.C. § 1225(b)(2)(A). This means that the alien must be an "applicant for admission" who is "seeking admission" and one who is "not clearly and beyond a doubt entitled to be admitted."

Section 1225(a)'s definition of "applicants for admission" does not match Petitioner. The statute defines an "applicant for admission" as "[a]n alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). And the statute defines "admission" and "admitted" as "with respect to an alien, the lawful entry of the alien into the United States *after* inspection and authorization *by an immigration officer*." 8 U.S.C. § 1101(a)(13)(A) (emphasis added). So read together, "applicants for admission" means "aliens who have unlawfully entered into the United States after inspection and authorization by an immigration officer." So it does not follow that Petitioner is an "applicant for admission" simply because he now resides in the interior of the country.

Nor does 1225(a)'s "seeking admission" language apply to Petitioner under these facts. "Seeking," of course, implies "some sort of present-tense action." *Barco Mercado*, -- F. Supp. 3d. --, 2025 WL 3295903, at *5. With that in mind, to fall under § 1225(b)(2)(A), the alien must be *actively* seeking admission, not simply residing in the country after entering it unlawfully.

Because Petitioner's unlawful entry occurred in 2023, the Court is not persuaded that he was actively seeking admission when ICE detained him.[4]

The plain meaning of § 1226 better captures Petitioner's situation. For example, it applies to the "apprehension and detention of aliens," providing that, upon "a warrant issued by the Attorney General, an alien may be arrested or detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Again, ICE detained Petitioner in the interior of the country where he was already residing based upon a warrant for his arrest.[5] (ECF No. 10-2.) So the Attorney General has the discretion under this section to "continue to detain [him]" or she "may release [him] on bond." (*Id.*) She may not, though, deny him the bond hearing to which he is entitled. *See* 8 C.F.R. § 1236.1(c)(8), (d)(1).

The titles of the statutory provisions also supports this distinction. *See Godinez-Lopez*, 2025 WL 3047889, at *4. "[T]he title of a statute in the heading of a section [is a] tool[] available for the resolution of a doubt" about a statute's meaning. *Dubin v. United States*, 599 U.S. 110, 121 (2023). Section 1225's title is "Inspection by immigration officers; expedited removal of inadmissible *arriving* aliens; referral for hearing." 8 U.S.C. §1225 (emphasis added). Section 1225's title then envisions *arriving* aliens placed in expedited removal. But again, Petitioner was detained far from the border. *See Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). Meanwhile, § 1226's title is "Apprehension and detention of aliens." 8 U.S.C. § 1226. That title fits here. Petitioner was apprehended here, not while arriving in the United States, but

---

[4] The INA recognizes two classes of aliens who are not seeking admission, but that does not preclude the existence of other alien classes that do not fall under § 1225. *See, e.g.*, *Padilla-Ugsha*, 2025 WL 3638007.

[5] Petitioner disputes whether the arrest warrant was issued before his arrest. (ECF No. 11 at PageID 50.)

years later.  And he is *now* detained.  Section 1225's title therefore seems inapplicable to aliens in Petitioner's shoes, but § 1226's title seems spot on.

That is not all.  Respondent's interpretation of § 1225(b) makes § 1226(c)'s mandatory detention provision superfluous.  True enough, subsections 1226(c)(1)(E)(i)–(ii) provide for mandatory detention of certain aliens.  But it applies only to those aliens who both entered the country without inspection under 8 U.S.C. § 1182(a)(6)(A), (C), and (7) and who are also "charged with, . . . arrested for, . . . convicted of . . ." certain crimes.  8 U.S.C. § 1226(c)(1)(E)(i)–(ii).  And so to interpret § 1225(b)(2)(A) as Respondent argues would subject mandatory detention to every alien who did not lawfully enter the country.  This reading would strip 1226(c) of meaning.  What is more, Congress only recently added subsection 1226(c)(1)(E) when it passed the Laken Riley Act.  Pub. L. No. 119-1, 139 Stat. 3 (2025).  The Court declines to presume that Congress pointlessly amended the statute with a redundant provision when it most recently considered it.  *See Bilski v. Kappos*, 561 U.S. 593, 607–08 (2019) ("This would violate the cannon against interpreting any statutory provision in a manner that would render another provision superfluous.").

At bottom, §§ 1225 and 1226 are different statutory provisions that apply to different contexts.  And the Supreme Court has already distinguished the two.  In *Jennings*, the Court determined that the government may "detain certain aliens seeking admission into the country" and that the § 1225 process "generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible." 583 U.S. at 287, 289.  Whereas § 1226 "authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings."  583 U.S. 281, 289 (2018)

11

(emphasis added).  Respondent has articulated no compelling reason to stray from this commonsense understanding.

So the Court finds § 1226 governs the detention of an alien like Petitioner, who has no known criminal history and who has been residing in the interior of the United States.  Petitioner is therefore subject to the discretionary bond process under § 1226.

## III.    Due Process

Because the Court has found that § 1226(a) applies to Petitioner's detention, he is owed the process given to him under the statute.  *See, e.g. Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020) ("[A]n alien in [Petitioner's] position has only the rights . . . that Congress has provided by statute.").  Petitioner alleges that Respondent violates his due process rights by continuing to detain him without a bond hearing.  (ECF No. 1 at PageID 8–9.) Respondent counters that because Petitioner complains that he is detained under the wrong statute, even if his detention is unlawful, it is not unconstitutional.  (ECF No. 10 at PageID 35–36.)  Or put another way, Respondent asserts that § 1225(b)(2)(A) has already afforded Petitioner the due process that Congress chose to provide him.  (*Id*. (citing *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 138–40 (2020); *Landon v. Plasencia*, 459 U.S. 21, 32 (1982); *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950).)

The Fifth Amendment of the U.S. Constitution protects every person from being "deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  And to evaluate the level of process owed to a noncitizen, the Sixth Circuit generally "applies the balancing test from *Mathews v. Eldridge*, 424 U.S. 319 (1976)."  *Godinez-Lopez*, 2025 WL 3047889, at *6 (citing *United States v. Silvestre-Gregorio*, 983 F.3d 848, 852 (6th Cir. 2020)).  *Matthews* considers (1) "the private interest that will be affected by the official action" (2) "the

12

risk of an erroneous deprivation of such interest," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  424 U.S. at 335.

All three factors weigh in Petitioner's favor here.  He has a strong liberty interest in being free from physical detention. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).  The risk of erroneous deprivation is high here considering that Respondent and the BIA's current position is to afford him no bond hearing whatsoever.  And bond hearings are a significant procedural safeguard to balance the Government's interest in immigration enforcement against individual liberties.  So the Court finds that the Government's interest in detaining Petitioner without that procedural safeguard does not outweigh Petitioner's liberty interest or the risk of erroneous deprivation.  In fact, as it stands, Petitioner has no meaningful opportunity for an immigration judge to consider whether he is a danger to society or a flight risk.  And the fact that Petitioner has been residing in the United States for almost fifteen years with no known criminal history further tips the scales in his favor.

This all makes clear that Petitioner's continued detention without a bond hearing violates his due process rights.  The Court therefore **GRANTS** the Petition.

## IV.    Attorney's Fees and Costs

Petitioner seeks attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412.  (ECF No. 1 at PageID 10.)  Section 2412(b) allows a court to award "reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States." 28 U.S.C. § 2412(b).  The Federal Rules require that claims for attorney's fees and related

13

expenses be made by motion.  Fed. R. Civ. P. 54(d)(2)(A).  So Petitioner must timely file a

motion that complies with Local Rule 54.1(b) to seek attorney's fees and costs.  *See* L.R. 54.1(b).

## CONCLUSION

For the reasons above, the Court **GRANTS** the Petition and **ORDERS** Respondent to

release Petitioner.  *See Rodriguez v. Woosley*, No. 4:25-CV-168-RGJ, 2026 WL 36345, at *11–

12 (W.D. Ky. Jan. 6, 2026) (collecting cases and finding immediate release as a remedy).  And

the Court further **ENJOINS** Respondent from pursuing Petitioner's detention under 8 U.S.C. §

1225(b)(2)(A).  If DHS seeks to re-detain Petitioner under 8 U.S.C. § 1226(a), the Court

**DIRECTS** it to provide him with the bond hearing he is entitled to under that provision.

**SO ORDERED**, this 4th day of March, 2026.

s/Thomas L. Parker
THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE

14